Frederick B. ROGERS, Plaintiff–Appellant,

v.

Jennifer HELLENBRAND and Jean Thieme, Defendants–Appellees.

No. 04–1918.

United States Court of Appeals, Seventh Circuit.

Submitted Nov. 23, 2004.*

Decided Nov. 24, 2004.

---

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

Before BAUER, MANION, and WOOD, Circuit Judges.

## ORDER

Frederick Rogers, an inmate at the Racine County Correctional Institution in Wisconsin and a student at the prison's Belle Venture School, claims that teacher Jennifer Hellenbrand and educational director Jean Thieme forced him to attend a religious holiday program in violation of his rights under the First Amendment and the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. §§ 2000cc, *et seq.* The district court granted summary judgment for the defendants and we affirm.

The basic facts are not in dispute. Rogers pursued a high school equivalency certificate at Belle Venture, which offers literacy, vocational, and community-living education programs to inmates. In December 2002 the school sponsored a holiday program for its students. The program, entitled "Peace on Earth, Goodwill to All," took place during school hours and was intended to provide students an opportunity to use their newly acquired vocabulary, writing, and speaking skills, and also to lift the students' spirits during a season that prisoners typically find especially trying. Students and staff performed songs, skits, and readings. Participation in the show was voluntary, and the students who performed selected their own material, which had to be pre-approved by a teacher. One student read a Bible passage, and other students read poems and sang songs with titles ranging from "A Rendition of the Prodigal Son" to "Santa Goes to Prison." Some of the school's staff also participated, performing songs such as "Alvin's Christmas" and "Jingle Keys" and leading an activity in which students were to fill in missing words in the poem "A Visit from Saint Nick." Before the program, Rogers had announced that he did not wish to attend because the content might conflict with his religious beliefs, but Hellenbrand explained that he would be marked absent if he did not attend. An isolated absence bears no consequence for a student, although chronic absenteeism results in sanctions. Rogers did attend, but afterwards he filed a grievance within the prison's complaint system. The grievance was dismissed because the program was a school activity with an educational component, but the complaint examiner suggested that Thieme reconsider whether attendance at the holiday program should remain "mandatory" in the future.

After his grievance was dismissed, Rogers filed an action in district court, claiming violations of the Free Exercise Clause and the Establishment Clause of the First Amendment, and of RLUIPA. Without identifying his religious beliefs, Rogers asserted that he should not have been "forced" to attend the holiday program because he did not believe that "the school or the state" shared his "beliefs and views on religion." He alleged that attending the holiday program had caused him to have a "mental relapse" and hallucinate that a teacher and God were trying to kill him. In granting summary judgment for the defendants, the district court held that Rogers could not prevail under the Free Exercise Clause because he neither identified a "religious act" that was burdened by the defendants' actions nor demonstrated that he was compelled to affirm a repugnant belief. The court also held that Rogers could not establish a violation of the Establishment Clause because the program consisted of individual expressions in a limited public forum, and because it had a neutral purpose and did not have the effect of endorsing religion. And finally, because Rogers had not identified his religious beliefs or how he practices them, the court held that he could not demonstrate under RLUIPA that the defendants had "substantially burdened" his observation of his faith.

On appeal Rogers argues that all three claims should have survived summary judgment, but his effort to convince us that the district court erred is complicated by his competing claims during the course of this litigation that he is a Christian and an atheist. In his complaint Rogers asserted that the religious undertones of the holiday program were offensive to his religious beliefs. Although he did not identify those beliefs, his primary objections to the program were that it contained a Bible reading and references to Christmas, "a Christian holiday," and generally had a "religious component." The defendants, though, submitted evidence that Rogers had always professed to be a Christian. In 2000 and 2001, Rogers had taken correspondence courses entitled "Doing Time with Jesus," "Knowing Jesus Christ," and "Lessons for Christian Living." In January 2002, he signed a "Religious Preference" form on which he checked the box marked "Protestant" and filled in the blank marked "Name of Parent/ Legal Guardian" with "Jesus Christ, Father God, and Holy Spirit." Confronted with this evidence, Rogers replied to the defendants' summary judgment motion by asserting that he was a Christian and objected to references during the holiday program to Santa Claus, "a pagan and mystical lie." He explained that the program "was in fact blasphemy and idolatry and went against the 1st commandment of God, Christmas is all about God and his son Jesus' birth." Now having lost at summary judgment, Rogers has reverted to the position that he expressed in his complaint, asserting in his appellate brief that his "atheist belief is central to his religion" and that the holiday program conflicted with this "sincere belief." He has attached to his brief a preference form designating his religion as "Atheist," as well as an affidavit in which he swears that he does not believe in "Christmas, God or Jesus." But because "evidence not designated to the district court in resisting summary judgment cannot be properly argued on appeal," we cannot consider these documents here. See Hrbowski v. Worthington Steel Co., 358 F.3d 473, 478 (7th Cir.2004). Thus we have no clear picture of Rogers's religious beliefs or practices.

 Given Rogers's inconsistent statements about his religious beliefs, both his free exercise and RLUIPA claims fail. The Free Exercise Clause is violated

when the government substantially burdens the "exercise" of religion, i.e., an act or practice mandated by or central to a particular religion. *See Hernadez v. C.I.R.*, 490 U.S. 680, 699, 109 S.Ct. 2136, 104 L.Ed.2d 766 (1989); *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 760 (7th Cir.2003). Rogers, though, never identified his religious beliefs or practices, so he necessarily failed to demonstrate that attending the holiday program conflicted with his beliefs or any central practice of his religion. The same shortcoming also dooms his claim under RLUIPA. The statute prohibits the government from imposing a "substantial burden" on a prisoner's "exercise" of his religion, but in contrast to the Free Exercise Clause, RLUIPA defines religious "exercise" broadly to include practices that are not central to, or compelled by, one's religion. *Civil Liberties for Urban Believers*, 342 F.3d at 761. Again, Rogers identified no religious activity, central to his religion or otherwise, that was burdened by attending the school's holiday program. And having presented no evidence on this critical issue, he could not have survived the defendants' motion for summary judgment.

■ That leaves the claim under the Establishment Clause, which is more substantial if only because it does not turn on Rogers's religious beliefs. Rogers argues that the school's holiday program amounted to forced attendance at "a state-established church" in violation of the Establishment Clause. Government activity runs afoul of the Establishment Clause if (1) it has no secular purpose; (2) its primary effect is to advance or inhibit religion; or (3) it fosters excessive government entanglement with religion. *Lemon v. Kurtzman*, 403 U.S. 602, 612–13, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971); *Books v. City of Elkhart*, 235 F.3d 292, 301 (7th Cir.2000).

The challenged activity is unconstitutional if it violates any one of the three prongs. *Edwards v. Aguillard*, 482 U.S. 578, 583, 107 S.Ct. 2573, 96 L.Ed.2d 510 (1987); *Books*, 235 F.3d at 301.

Rogers produced no evidence that the holiday program lacked a secular purpose. Under the first prong of the *Lemon* test, we accept the purpose offered by the government as long as it is not "a sham." *Ind. Civil Liberties Union v. O'Bannon*, 259 F.3d 766, 771 (7th Cir.2001). Thieme, the school's director, submitted an affidavit attesting that the holiday program was intended to be "an educational experience" where students could "express themselves using the skills learned in school, such as vocabulary, writing, and speaking skills." Additionally, Thieme explained that she had hoped that the program would help to counteract the "sadness and emotional stress" prisoners typically experience during the holiday season. In contrast, Rogers infers that the program must have had a religious purpose because its theme, "Peace on Earth, Goodwill to All," "comes out of the Holy Bible" and the participants were instructed to adhere to that theme. But, as the summary judgment evidence shows, the students selected a wide variety of readings and songs to present, many of them secular in nature as Rogers himself acknowledged when he (temporarily) objected to the "blasphemy and idolatry" included in the program. Moreover, Rogers did not demonstrate, or even allege, that the secular purposes offered by the defendants are pretextual.

Nor did Rogers supply evidence that the holiday program had the primary effect of advancing or inhibiting religion. Under this prong of the *Lemon* test, the government itself must have "advanced religion through its own activities and influence." *Charles v. Verhagen*, 348 F.3d 601, 610 (7th Cir.2003). The government imper-

missibly "advances" religion if by its actions it appears to endorse religion. *County of Allegheny v. ACLU,* 492 U.S. 573, 597, 109 S.Ct. 3086, 106 L.Ed.2d 472 (1989); *Freedom from Religion Found., Inc. v. City of Marshfield,* 203 F.3d 487, 493 (7th Cir.2000). Here, the program had a religious component only to the extent that individual students selected religious material to present. Rogers submitted no evidence to suggest that school personnel encouraged the students to choose religious as opposed to secular presentations or that they otherwise gave the impression of endorsing religion. Nor did he support his inference that the program's theme was meant to solicit performances with religious content. The mere fact that some religious material was presented does not establish that the "principal or primary effect" of the program was to advance religion. *See Torricellas v. Poole,* 954 F.Supp. 1405, 1411–12 (C.D.Cal.1997) (holding that a party held in prison's visiting room did not have the effect of advancing religion where it was dubbed a "Christmas" party and some songs contained religious lyrics), *aff'd,* No. 97–55369, 1998 WL 133602 (9th Cir. Mar.18, 1998) (unpublished decision).

Finally, there was no evidence that the school's presentation of a holiday program caused excessive entanglement of government and religion. This prong of *Lemon* is concerned with "the character and purposes of the institutions that are benefited, the nature of the aid that the State provides, and the resulting relationship between government and religious authority." *Agostini v. Felton,* 521 U.S. 203, 232, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997) (quoting *Lemon,* 403 U.S. at 615, 91 S.Ct. 2105). Rogers did not show that the program was connected to a religious group or that the defendants participated in, supervised, or inquired into religious affairs. *See United States v. Indianapolis Baptist Temple,* 224 F.3d 627, 631 (7th Cir.2000). Indeed, the extent to which the defendants controlled the content of the presentations was minimal; they simply enforced criteria including that each presentation should last only five minutes, reflect the program's theme, contain only "appropriate" language, and give credit to the authors of non-original work.

Rogers emphasizes that the holiday program occurred in a "school setting," apparently attempting to invoke the line of cases in which the Supreme Court has found certain practices to violate the Establishment Clause because they took place in public schools. The Court has recognized that there are "heightened concerns with protecting freedom of conscience from subtle or coercive pressure in the *elementary and secondary* public schools." *Lee v. Weisman,* 505 U.S. 577, 592, 112 S.Ct. 2649, 120 L.Ed.2d 467 (1992) (emphasis added). But concern for "impressionable" young students does not aid Rogers's case; indeed, the Court has also acknowledged that "the potential for undue influence" decreases after high school. *Edwards,* 482 U.S. at 584 n. 5, 107 S.Ct. 2573. Because the students at Belle Venture are inmates in an adult prison, Rogers's reliance on public school cases is misplaced.

Accordingly, the district court properly granted summary judgment for the defendants.

AFFIRMED.